SMITH v. CROCKER et al.

(Supreme Court, Appellate Division, First Department. February 5, 1897.)

1. CONTRACTS—INTERPRETATION—LIQUIDATED EXPENSES.
　　Plaintiff's assignor agreed to demonstrate the working of a wine manufacturing process if $5,000 was furnished by defendants to pay the expenses, and if defendants would "pay the $5,000 on the above condition,—that is, to defray the expense of the demonstration." Held, that the expenses were liquidated at $5,000.

2. ABATEMENT AND REVIVAL—ANOTHER ACTION PENDING IN FOREIGN JURISDICTION.
　　An action is not abated by the pendency of an action in another state by plaintiff against other defendants, on the same cause of action.

3. COURTS—ACTION BETWEEN NONRESIDENTS—STATE POLICY.
　　The rule that the courts of New York will not retain jurisdiction of an action between nonresidents on a cause of action arising outside the state applies only to actions in tort.

Appeal from trial term, New York county.

Action by Frederick H. Smith, Jr., against Henry J. Crocker, William McCondry, David C. Ferris, and Calvin W. Kellogg, only defendant Crocker being served with summons. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant Crocker appeals. Affirmed.

The defendant desired a demonstration in California of the workings of the International Wine Company's process for manufacturing champagne and other sparkling wines. The wine company made the following proposition, which was accepted: "We do not intend to bear the cost of sending a plant to California to demonstrate our process. If they [defendants] desire this to be done there, $5,000 to pay the expenses of the same must be furnished. We do not, however, ask that this money be paid until a plant sufficient to make the demonstration has been erected, and one hundred cases of champagne actually made. Then to be paid at once, and this without reference to whether the California Co. buys or rejects the process. This refers to the demonstration solely, and does not affect the terms heretofore arranged on which they may buy. That company must also understand that the sample sent them, like all our champagne, is made from imported wine; and we cannot guaranty that champagne from California wines will be the same in flavor as that made from the imported article, but, as to life and purity, we will test it with the sample sent. Mr. Ferris' expression as to our furnishing champagne as good as sample must be taken with this qualification. If, then, that company will agree to pay the five thousand dollars on the above condition,—that is, to defray the expenses of the demonstration,—we will ship the plant; otherwise, not." The wine company made the demonstration of its process, and plaintiff, as assignee of its claim, sues for the $5,000.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

Charles K. Beekman, for appellant.
J. A. Dennison, for respondent.

O'BRIEN, J. Upon the former appeal (3 App. Div. 471, 38 N.
Y. Supp. 268), where the facts bearing upon this controversy were
stated, the principal issue was whether certain persons were agents
of the defendants and of others jointly interested with them, or
whether they were agents of a corporation; and, for the reason
that the plaintiff was prevented from presenting evidence tending
to charge the defendant Crocker personally, a new trial was or-
dered. Upon this trial, the evidence formerly excluded was ad-
mitted, and, in addition to other new testimony, we have that of
Ferris. He and one McCondry were the persons in California
through whom the contract was made. As said in the former opin-
ion:

"Was it [the contract] by Ferris and McCondry, on their own behalf, or acting
as agents for a company known as the Golden Champagne Company, or as the
agents for certain defendants, including the defendant Crocker, who, as partners
or as joint owners, were engaged in the production of champagne?"

Upon this new trial it appears that Ferris and McCondry were
acting as agents; and the main issue is thus narrowed down to a
question whether they were agents for the Golden Champagne
Company, or for the defendant Crocker and others, as partners or
joint owners. In the proposition of the International Wine Com-
pany, we find that it speaks of a company, and no doubt it assumed
it was dealing with a company; but we have now some evidence,
though slight, tending to show that, at the time, there was no com-
pany in existence, but that the defendant Crocker, with others,
had concluded to try the experiment of making champagne with
the machinery and process of the International Wine Company, and
had in mind the formation of the Golden Crown Company, which
appears subsequently to have been formed. We say the testimony
as to the date when the company was formed is slight, because the
exact date was not directly shown by either the plaintiff or the
defendant. We have, however, the fact that the proposition of
the International Wine Company was of the date of April 7, 1891,
and the telegram in answer thereto was sent in the same month;
and, upon the receipt of the latter, the plant was shipped to Cal-
ifornia, and was set up at a place called "Cloverdale," about the
14th of May, 1891. The pleadings in an action in the superior court
of the state of California, by this plaintiff against McCondry and
Ferris, were offered by the defendant, and admitted in evidence.
In McCondry's answer we find a statement that, pursuant to agree-
ment, "these defendants and said Crocker, Prescott, Kellogg, Casey,
and Sink did organize a corporation on the 13th day of May, 1891,
known as the Golden Crown Wine Company." If the date thus
fixed was not correct, it was in defendant's power to correct it,
which he did not do. And as we have said, therefore, there

was some evidence from which the jury could infer that the contract then made was on behalf of the defendant Crocker and others, who at that time were individually, and not as a corporation, conducting the negotiations. That the proposition of the International Wine Company was presented to Crocker, and that he took part in arranging the terms, and in providing the $5,000 which was agreed to be paid, are fairly shown by evidence sufficient to justify the jury in drawing such an inference. Upon the main issue, therefore, there was sufficient to present the question to the jury; and unless there were errors made in rulings upon evidence, or upon some question of law, their verdict should not be disturbed. In passing, it is proper to say that we have not overlooked the suggestion that the plaintiff's assignor did not carry out and complete the contract by tendering the 100 cases of champagne; but this also, upon the evidence, was for the jury.

Much testimony offered by the defendant, directed to showing that the wine produced by the plant was unmerchantable, and of inferior quality, was ruled out by the court. We think such rulings were right. The plaintiff's assignor entered into no contract guarantying the quality of the wine; nor did it agree to make it equal to the samples which by the process were made in New York. Thus, in its proposition, the wine company says:

"That company [referring to those in California] must also understand that the sample sent them, like all our champagne, is made from imported wine; and we cannot guaranty that champagne from California wines will be the same in flavor as that made from the imported article, but, as to life and purity, we will test it with the sample sent them. Mr. Ferris' expression as to our furnishing champagne as good as sample must be taken with this qualification."

Equally untenable is the contention that the International Wine Company was not entitled to $5,000, but was only to be reimbursed for any expense it might incur in shipping its plant and exploiting its process in California, because we think the fair reading of the letter will show that that sum was fixed upon as a liquidated amount. Thus, in its proposition, the wine company says:

"If, then, that company [meaning the California people] will agree to pay the five thousand dollars on the above condition,—that is, to defray the expense of the demonstration,—we will ship the plant; otherwise, not."

That it shipped the plant, and that it endeavored to apply its process to California wine, is not disputed; nor does any good and sufficient reason appear why the defendants should not, according to the terms of their contract, have paid over to the plaintiff's assignor the $5,000 which was deposited in the Cloverdale Bank. That the results did not come up to their expectations, that the experiment was not successful with California wine, and that the defendants were disappointed, does appear. But we do not think this is any sufficient reason for depriving the plaintiff's assignor of the benefit of its expenditures in making the experiment a success, the failure of which the California people have voluntarily assumed.

In addition to questions raised by the appellant bearing upon the merits, all of which have been considered, and the principal ones

discussed, we have two others, relating to the right of the plaintiff to maintain this action.

It appears that this plaintiff sued Ferris and McCondry in California upon the same contract, and to obtain the same relief as by the verdict of the jury has been accorded to him here. Having made this appear, the defendant asked the trial judge to charge, in effect, that, by suing the parties named in California on the same cause of action, the plaintiff elected, and that, therefore, he is prevented from maintaining an action against the defendants in our courts; the reason assigned being that the plaintiff could not sue on the same cause of action two different people, in two different jurisdictions. This request, we think, was properly refused. A party may have pending actions against the same defendant, to recover the same indebtedness, in different states at the same time; and the pendency of an action in one state to recover a debt cannot successfully be pleaded in abatement in an action in another state to recover the same debt. It is only where one of the actions has ripened into a judgment that such judgment can be pleaded in bar in the other action.

The contention that, because both the plaintiff and the defendant Crocker are nonresidents, the trial court should have refused to entertain jurisdiction of the cause, we regard as equally untenable. We are referred to a number of cases (Ferguson v. Neilson [Sup.] 11 N. Y. Supp. 524; Robinson v. Navigation Co., 112 N. Y. 315, 19 N. E. 625) in which it was held that the courts of this state will not retain jurisdiction of and determine an action for tort between parties residing in other states on causes of action arising out of the state, as a matter of public policy, unless special reasons are shown to exist which make it necessary or proper so to do. An examination of the cases cited, as well as of all to which our attention has been called where that rule has been applied, shows that they were actions in tort, and not actions upon a contract. Our courts have never refused to entertain jurisdiction of a cause of action arising upon contract. In the case of Davidsburgh v. Insurance Co., 90 N. Y. 526, it was held that as the city court of Brooklyn was a local court, of limited jurisdiction, unless the defendants came within the classes over which the statute had conferred jurisdiction upon this court, the parties could not confer jurisdiction by consent. This case is in no respect an authority for the rule contended for by the appellant. Whether, therefore, this contract was made in California or New York (upon which question much in favor of the view that it was a New York contract might be said), we do not think it is necessary to determine. As it appears that the action was one upon contract, the court committed no error in entertaining jurisdiction of the cause.

Having concluded that, upon the questions of law, the appellant's contentions cannot be sustained, and that we would not be justified in interfering with the verdict of the jury, it follows that the judgment should be affirmed, with costs. All concur.